Mr. Justice Scott delivered the opinion of the Court. A similar application was refused this party at the last tenn of this court (William J. Marr Ex parte, ante,) and this must share the same fate.- ’ When the several provisions of the constitution are considered together, we think it manifest, it never was the intention of the framers of that instrument, that causes should be brought directly into this court from the county and probate courts, and from the courts of justice’s of the peace, unless in cases where it might be absolutely necessary to prevent a failure of justice. Such an hypothesis would be utterly at war with a design to make the administration of justice cheap to the suitors, and equally accessible to the rich and the poor, at places convenient to their homes. A design which, we think, was no less prominently contemplated by the framers of the constitution than manifestly developed in the distribution of the judicial powers among the several courts, and in fixing the limits of their territorial jurisdiction. And the various subsequent enactments of the Legislature making ample and convenient provisions for appeals from these several inferior courts to the Circuit Courts, are no less the reflex of this beneficent spirit of the constitution than a vindication of the wisdom of the purposes contemplated by its framers in this connexion. Some of the mischiefs that must otherwise ensue, were foreseen by this court, and thus graphically alluded to in the case of Frail Ex parte, (3 Ark. 564,) decided soon after the organization of this court, when expressing the opinion “that it was never designed either by the framers of the constitution or by the Legislature, that this court should be oppressed with questions of law which might arise before every justice of the peace or corporation court, by allowing them to be brought up direct on writs of error.” “The man of moderate means, the diffident suitor, and the lover of quiet will yield to the presumptuous and overbearing, and the rights of the poor will frequently be crushed by his more wealthy opponent. The spirit of litigation would be engendered, strengthened and diffused, and the usefulness of this court, in a great measure, destroyed by crowding its docket with cases, in many instances, without a shadow of law or justice to sustain them, to the annoyance of meritorious litigants and the exclusion of its legitimate business.” And in presenting the grounds of their opinion that the applicant in that case was not entitled to bring his cause directly before the Supreme Court from the corporation court of Little Rock, because, by law an appeal was provided first to the Circuit Court, from which a writ of error would lie to this court, the court further remarked: “In examining the various provisions of the constitution, and the several laws defining the powers and duties of the different tribunals, it will be found that competent means are provided, by which all private rights may be pursued and private injuries redressed, and that the utmost harmony pervades our whole system of jurisprudence. There is no class of cases unprovided for; on the contrary, the laws are adapted to every occasion that may arise — to every circumstance that may occur, and substantial justice may be speedily administered to all. If a party feels aggrieved by one tribunal, he may, if he avails himself of the facilities offered to him, step by step, and in regular gradation in general, ascend from the most inferior to the superior court, until at last he reaches the highest point of authority and law. By this means, individual rights are secured, the errors of the one court rectified by the other, and the whole judicial system preserved entire and unbroken.” Nevertheless, both before and since the determination of the case just cited,this court has adjudicated numerous cases brought here directly from the courts inferior to the Circuit Courts. The greater number of them, however, having been entertained upon the ground that although the Circuit Courts had ample capacity to afford complete relief, yet if the party aggrieved should prefer to resort at once to this tribunal, he had a right to his writ. A doctrine that was first announced in the case Webb & Estell vs. Hanger & Winston, (1 Ark. 122); which case, with those based upon it, we overruled at the last term of this court. Its annunciation, however, seems not to have been made without some hesitancy, as we infer from the accompanying remark of the court that, “ In general, we would deem it more appropriate and regular for the application to be first made to the Circuit Court.” Nor is it remarkable that there should have been hesitancy in view of the observations of the court already quoted, and the further remark, made in the case of The State vs. Ashley et al., (1 Ark. R. 309,) when speaking of the organization, jurisdiction and powers of the several courts of this State, that they were “so ordered, arranged and distributed as to-avoid all conflict of authority between them, and to constitute a regular gradation of power , each having a control and revising authority over such others as are inferior to it, to produce a harmonious action between the several branches of the whole system.” Can it be true, under such a system as this, that a party is entitled to his remedial writ in the first instance in this court for a grievance in one of these inferior courts ? It is true that this court has the most ample appellate powders, subject to legislative regulations and restrictions touching its exercise; and is also entrusted with a general superintending control over all inferior and other courts of law and equity; and is thus legally competent to afford complete remedy for any such grievance. But the Circuit Court is in general equally competent for such purpose, and will, in the large number of such cases, dispense justice at less expense and with more convenience to the parties and at less delay. These courts, besides their extensive and undoubted civil and criminal and chancery original jurisdiction, are invested by the legislature with ample intermediate appellate jurisdiction; besides being entrusted under the constitution with a specific superintending control over the county and inferior courts and over justices of the peace in each county of their respective circuits. And being also presided in by learned jurists, elected by the people themselves, are, in their constitution and nature, eminently fitted to accomplish, as to the great mass of the transactions among men, all that it could have been expected that the judiciary should achieve. The appellate power of this court is to be exercised under such regulations and restrictions a,s shall be, from time to time, prescribed by law. This is the substance of the constitutional provision. The Legislature has prescribed that “an appeal” shall be had from “ any final judgment or decision of any Circuit Court in any civil case,” and that “ writs of error upon any final judgment or decision of any Circuit Court shall issue of course in all eases out of the Supreme Court;” and have made various other regulations touching these proceedings : and, besides these, have made numerous provisions by which appeals may be taken from the several inferior to the Circuit Courts. And by these means secured for all suck cases an ultimate revision by the appellate functions of this court. Nor are these the only means, numerous and ample as they are, by which the regular appellate power of this court may be invoked for cases arising in these inferior courts. The powers of superintending control entrusted to the Circuit Courts may draw into these courts still additional causes, which, when finally adjudged and decided, will be prepared to come under revision here. Thus almost every conceivable case that can properly arise in any of our courts of original jurisdiction, may be brought up here for regular appellate revision by means of the legislative enactments. It is true that many of such would come up indirectly through an 'intermediate court; but surely no one would contend that it was not competent for the legislature so to provide, or that such were any the less “restrictions or regulations” touching the exercise of the appellate powers of this court. The “restrictions and regulations” authorized by the constitution, are not such as this court may or may not approve, but are expressly “such as may, from time to time, be prescribed by law.” And it would seem to be going a great way to say, in an ordinary case, and without the most grave and cogent reasons for such a course, that, after the Legislature had, under the express provisions of the constitution, made regulations and restrictions touching the exercise of the appellate powers of this court, that this court would not be governed by them, and would persist in being governed by common law regulations. We cannot, therefore, but feel inhibited from such a course by what we conceive to be the manifest intention of the framers of the constitution, and by the spirit of that instrument, and by our course of legislation on the subject that has been responsive to both. And we do not think that any other view of our duty can be maintained on any ground of sound construction. Nor can we perceive that the proper exercise of our powers of general super-tending control rests upon any different foundation in principle. These, as we have elsewhere remarked in substance, place this court with regard to all other courts in this State, in the same position in this respect, that the court of King’s Bench, in England, occupies in relation to the courts of that Kingdom, in giving it a superintending authority and control. In giving it the power to overlook and to govern, to stimulate, or to check and restrain all other courts: that the subordinate parts may be combined, and in some sense, consolidated by a concert of co-operation and harmony of action throughout the entire system, to the end that there shall be no failure of justice, either from the non-action, or from the excentric action of any of these courts, or from any accidental incapacity of any of them to administer justice. These are, therefore, to a great extent, undefinable and ultimate judicial powers entrusted to this court for the most grave and weighty purposes. But although this court is possessed of these powers, for the purposes indicated, the Circuit Courts are also entrusted with like powers by the express provisions of the constitution, and like their intermediate appeallate powers, created by the Legislature in regulating the appellate powers of this court, may be brought to bear upon the operation of the inferior courts, in the large number of cases that can arise, at less expense and with more convenience to the parties and with less delay of justice. And when this court, by its superintendency and control of the Circuit Courts, as well in reference to its ordinary duties as in reference to its duties of superintending, and control over the inferior courts, drives forward the whole machinery of the judicial system, we cannot perceive that it any the less exercises its proper functions, or in any degree falls short of its high duties, than when it would achieve the same, and by direct action upon the separate and subordinate parts of the system, while at the same time it is manifest to our minds that greater concert of co-operation, harmony of action, and efficiency of administration will be effected. It is in the light of these views, in reference to what we conceive to be the true and sound construction of the constitution, as to our duties in this connection that we feel a like inhibition resting upon us to exercise these high powers, otherwise than upon tbe Circuit Court, until after application for redress shall have been first made to that court, or its legal incapacity shown. And besides the authority incident to and included in these two great functions — the one appellate, and the other to superintend and control all other courts, and prevent a failure of justice, we have no other powers, as we have elsewhere said. In this case, there having been no showing made that any application has been made to the Circuit Court for redress or if its incapacity to act, the motion must be denied.